**E-FILED**

Thursday, 28 July, 2005  01:48:18 PM
Clerk, U.S. District Court, ILCD

## IN THE UNITED STATES DISTRICT COURT
## FOR THE CENTRAL DISTRICT OF ILLINOIS
## AT ROCK ISLAND

| | | |
|---|---|---|
| **RICHARD MITCHELL,** | ) | |
| | ) | |
| Petitioner, | ) | |
| | ) | |
| v. | ) | **CASE NO. 05-4039** |
| | ) | |
| | ) | |
| **UNITED STATES OF AMERICA,** | ) | |
| | ) | |
| Respondent. | ) | |

### UNITED STATES' MOTION TO DISMISS
### PETITION UNDER 28 U.S.C. § 2255

COMES NOW the United States of America, by and through the

undersigned Assistant United States Attorney, and moves this Court to dismiss

the Motion to Vacate or Set Aside Sentence filed by petitioner.  Richard Mitchell

("Mitchell") alleges he is entitled to relief due to claims of ineffective assistance of

counsel.  However, Mitchell previously waived his rights to file a § 2255 petition.

Thus, his petition should be dismissed.  Furthermore, even if considered, none of

Mitchell's claims have merit.

### I. Procedural History [1]

Mitchell was indicted in the Central District of Illinois on February 20,

---

[1] References to the District Court docket are "R.__", and "d/e___"; references to
the final Presentence Report are to "PSR__"; references to the plea transcript are to
"P.Tr.__"; references to the sentencing transcript are to "S.Tr.__"; references to Attorney
Appleton's affidavit, attached hereto as Exhibit A, are to "Aff.¶__".

2003, along with co-defendants Hector Interial, Kirk Bryner, and George Price.

He was charged in Count 1 with Conspiracy to Manufacture Methamphetamine,

in violation of 21 U.S.C. §§ 846, 841(a)(1) and 841(b)(1)(A), and Count 2 with

Attempted Manufacture of Methamphetamine, in violation of 21 U.S.C.

§§ 841(a)(1) and 841(b)(1)(C). (R.1)

On April 25, 2003, Mitchell pled guilty to Counts 1 and 2. (d/e 04/25/03)

On May 14, 2004, Mitchell was sentenced to life imprisonment on Count 1

and 360 months of imprisonment on Count 2, to run concurrently. Mitchell was

also sentenced to a term of supervised release for 10 years on Count 1 and 6 years

on Count 2, to run concurrently. (d/e 05/14/04) The Judgment and

Commitment Order was entered on May 21, 2004. (d/e 05/21/04)

Mitchell filed a Motion to Vacate or Set Aside Sentence on May 9, 2005.

(#05-4039) The government was ordered to respond to said motion by June 29,

2005. (#05-4039) The government filed a motion for extension of time to respond,

which the court granted, allowing the government until July 29, 2005, to respond.

(#05-4039)

**II. Statement of Facts.**

Mitchell returned to Kewanee, Illinois, in December of 2001 from Texas,

and moved in with Rex Harvey ("Harvey") at 815 East Street, Kewanee, Illinois.

(PSR¶12) Mitchell had known Harvey since they were young children. (PSR¶12)

2

In March of 2002, Harvey, Kirk Bryner ("Bryner"), and Mitchell became involved in the production of methamphetamine. (PSR¶12) The group used the "Nazi" method to cook the methamphetamine. (PSR¶13)  They yielded small amounts, approximately 15 percent yield,  at the beginning of the cooks but began to become more skilled in the process and eventually increased the yield to 54 percent. (PSR¶14)

During March through April of 2002, Harvey, Mitchell, and Bryner produced methamphetamine twice a week. (PSR¶15) They primarily used Harvey's residence, where surveillance equipment had been installed to spot intruders.  (PSR¶15)   Harvey maintained a safe in the vacant residence to house finished methamphetamine product, firearms, ammunition, ammunition magazines and clips, and a digital scale. (PSR¶15)  Harvey, Mitchell, and Bryner produced 120 grams of methamphetamine per cook on 16 different occasions during this period, producing a total amount of approximately 1,920 grams (1.92 kg) of methamphetamine. (PSR¶15)

Harvey and Bryner each wore a gun during the cooks. (PSR¶24)  Harvey was known to carry a 9mm Chinese chrome plated handgun and Bryner carried a .22 caliber revolver. (PSR¶24)  They advised other members of the conspiracy that they would not be caught alive while manufacturing methamphetamine. (PSR¶24)

Mitchell assisted in the cooking process by obtaining precursors, removing lithium strips from batteries, straining the liquid methamphetamine, and removing pseudoephedrine pills from the packets. (PSR¶17) Mitchell assisted the group six to seven times and was fully aware of their activities, as he lived with Harvey. (PSR¶17) In return for his assistance, Harvey gave Mitchell a small portion of methamphetamine and $200 for each cook. (PSR¶17)

On May 17, 2002, another associate of the group, Mark Dekezel ("Dekezel"), began serving a 90-day jail sentence in Henry County, Illinois for aggravated battery of a police officer. (PSR¶18) On at least one occasion prior to Dekezel's incarceration, Harvey, Mitchell, Bryner, and Price manufactured methamphetamine in an outbuilding on Dekezel's farm outside Geneseo, Illinois. (PSR¶18) Approximately 120 grams of methamphetamine was produced on this occasion. (PSR¶18) The group continued to manufacture methamphetamine at the farm without Dekezel's knowledge while he was incarcerated. (PSR¶18)

During May of 2002, Price prepared pills, while Mitchell, Harvey, and Bryner cooked twice a week, at either Harvey's residence or Dekezel's farm. (PSR¶19) The group manufactured methamphetamine eight times in May, 2002, producing 960 grams of methamphetamine. (PSR¶19)

Following a cook in June of 2002, that produced 1 pound of methamphetamine, Mitchell and Harvey had a "falling out," and Mitchell ceased

assisting the group. (PSR¶20)  On November 18, 2002, agents obtained a search warrant for Harvey's residence, based on information from an informant, and discovered several firearms, including handguns and assault rifles. (PSR¶26)

Following Harvey's arrest, Mitchell contacted a Cooperating Individual ("CI") and asked him/her to assist in the production of methamphetamine. (PSR¶33)  On February 5, 2003, the CI met with Mitchell at Mitchell's residence to discuss the cook and recorded the conversation. (PSR¶33)  Mitchell discussed cooking 1,800 pills and yielding 70 to 80 grams of methamphetamine and stated he intended to sell his portion of the cook. (PSR¶33)  On February 9, 2003, Mitchell met with the CI and made definitive plans to meet the next day, February 10, 2003, at 5 p.m. to produce 1 ounce of methamphetamine. (PSR¶33) Mitchell stated his plans were to produce an ounce every week or two after the initial cook. (PSR¶33)

On February 10, 2003, police conducted surveillance on Mitchell and observed him leave his home at 4:45 p.m. (PSR¶33)  He was stopped and his vehicle was searched. (PSR¶33)  Agents located a black cargo bag containing items used in the manufacture of methamphetamine. (PSR¶33)  Mitchell was then arrested, and in a post-arrest statement admitted he was on his way to manufacture methamphetamine. (PSR¶33)

### III.  Motion to Dismiss

Mitchell's Motion to Vacate, Set Aside, or Correct Sentence should be dismissed by this Court, as he expressly, freely and voluntarily waived his right to attack his conviction and/or sentence, both in the plea agreement and in open court at the change of plea hearing.

Mitchell's plea agreement specifically provided waivers of the right to appeal the final decision of the Court, and of the right to collaterally attack the conviction and/or sentence under § 2255.  The written plea agreement signed by Mitchell provided the following language.

> "10.  The defendant is aware that federal law, specifically, Title 28, United States Code, Section 1291, affords a defendant a right to appeal a final decision of the district court and that federal law, specifically, Title 18, United States Code, Section 3742, affords a defendant a right to appeal the conviction and/or sentence imposed.  Understanding those rights, and having thoroughly discussed those rights with the defendant's attorney, the defendant knowingly and voluntarily waives the right to appeal any and all issues relating to this plea agreement and conviction and to the sentence, including any fine or restitution, within the maximum provided in the statutes of conviction, and the manner in which the sentence, including any fine or restitution, was determined, on any ground whatever, in exchange for the concessions made by the United States in this plea agreement, unless otherwise stated in this paragraph.
>
> 11.  The defendant also understands that he has a right to attack the conviction and/or sentence imposed collaterally on the grounds that it was imposed in violation of the Constitution or laws of the United States; that he received ineffective assistance from his attorney; that the Court was without proper jurisdiction; or that the conviction and/or sentence were otherwise subject to collateral attack.  The defendant

6

understands such an attack is usually brought through a motion pursuant to Title 28, United States Code, Section 2255.  The defendant and the defendant's attorney have reviewed Section 2255, and the defendant understands his rights under the statute.  Understanding those rights, and having thoroughly discussed those rights with the defendant's attorney, the defendant knowingly and voluntarily waives his right to collaterally attack the conviction and/or sentence.  The defendant's attorney has fully disclosed and explained the defendant's right to attach the conviction and/or sentence collaterally with the defendant.  The defendant specifically acknowledges that the decision to waive the right to challenge any later claim of the ineffectiveness of the defendant's counsel was made by the defendant alone notwithstanding any advice the defendant may or may not have received from the defendant's attorney regarding this right.  Regardless of any advice the defendant's attorney may have given the defendant, in exchange for the concessions made by the United States in this plea agreement, the defendant hereby knowingly and voluntarily waives his right to collaterally attack the conviction and/or sentence.  The rights waived by the defendant include his right to challenge the amount of any fine or restitution, in any collateral attack, including, but not limited to, a motion brought under Title 28, United States Code, Section 2255. "

(d/e 04/25/03;Plea Agreement p.5-6)

During the plea hearing, Mitchell acknowledged having read the plea agreement, and understanding its contents.

> The Court:   Did you have a reasonable opportunity to read and discuss the plea agreement with your lawyer before you signed it?
>
> Mitchell:    Yes, sir, I did.
>
> The Court:   Does the plea agreement represent in its entirety every understanding that you have with the Government?
>
> Mitchell:    Yes, sir.

(P.Tr.5)

Mitchell acknowledged in open court that he knew of the waivers contained in the plea agreement, and openly and freely consented to them. (S.Tr.44; P.Tr.4-12) In accordance with it's usual practice, the Court specifically advised Mitchell at his change of plea hearing that he was waiving certain rights.

The Court:     On page 4 and about halfway through page 6 is a discussion of waiver of right to appeal and waiver of right to collaterally attack. What this means is that on the date that you're sentenced, when you walk out that door that's basically going to be the end of it, even if you're very unhappy with your sentence, even if you feel that the sentence was unlawful or unconstitutional, because in these paragraphs you're giving up the right to challenge either the process that was used in this proceeding or the sentence itself.

In fact, that would even include a claim, for example, that your own attorney had no effectively represented you in this case. The only exception to that as to the effectiveness of your attorney is that you're not giving up the right to claim that he was somehow ineffective concerning the plea agreement itself.

(P.Tr.8)

The Court:     And I'm saying this to you so that you understand the almost total scope of your waiver here to file either a direct appeal to the Court of Appeals in Chicago or to file a post-conviction proceeding. Normally that's done by way of a petition for writ of habeas corpus. That would be filed in this courtroom. You're giving up the right to do either one of those things. Do you understand that?

Mitchell:      Yes, sir.

8

> The Court:    Do you have any questions at all concerning the virtual total scope of this waiver?
>
> Mitchell:    No, sir, I don't.

(P.Tr.9)

Mitchell further affirmed his decision to sign the plea agreement and plead guilty after further questioning by the Court.

> The Court:    Are those the terms of your plea agreement with the Government as you understand them?
>
> Mitchell:    Yes, sir, it is.
>
> The Court:    Has anyone made any other or different promise or assurance to you of any kind in an effort to induce you to plead guilty?
>
> Mitchell:    No sir, no one.
>
> The Court:    Has anyone attempted in any way to force you to plead guilty?
>
> Mitchell:    No sir.
>
> The Court:    Are you pleading guilty of your own free will because you are guilty?
>
> Mitchell:    Yes, sir, I am.

(P.Tr.11-12)

The Seventh Circuit has recognized the validity of § 2255 waivers in plea agreements, noting that such a waiver is enforceable if it is "knowing and

voluntary and if the defendant cannot establish a claim of ineffective assistance of counsel in connection with negotiating the agreement." *Mason v. United States,* 211 F.3d 1065, 1069 (7th Cir. 2000); *see also Jones v. United States,* 167 F.3d 1142, 1145 (7th Cir. 1999)("waivers are enforceable as a general rule; the right to mount a collateral attack pursuant to § 2255 survives only with respect to those discrete claims which relate directly to the negotiation of the waiver.").

Mitchell makes no assertion in his motion that his counsel was ineffective in the negotiation of the plea agreement's Section 2255 waiver. On the record in open court, Mitchell acknowledged his satisfaction with his attorney, and confirmed discussing possible defenses to the charges with his attorney.

> The Court: Have you fully discussed those charges and the case in general, including any possible defenses that you might have, with Mr. Appleton as your attorney?
>
> Mitchell: Yes, sir, I have.
>
> The Court: Are you fully satisfied with the counsel, representation and advice given to you in this case by your attorney, Mr. Appleton?
>
> Mitchell: Yes, sir, I am.

(P.Tr.4)

In *United States v. Williams,* 184 F.3d 666, 668 (7th Cir. 1999), the Seventh Circuit held that a plea agreement should stand and be enforced as long as the

10

negotiation of the waiver was valid. *See also Jones* , 167 F.3d at 1144; *United States v. Schmidt*, 47 F.3d 188, 190 (7th Cir. 1995)*; United States v. Wenger*, 58 F.3d 280, 282 (7th Cir. 1995).  There exists a strong presumption of verity attached to the representations of the defendant and his counsel at the plea hearing, as well as any findings of the court accepting the plea.  These are strong presumptions that the petitioner must overcome in order to prevail in the allegation that his plea and waiver were not wholly informed and voluntary.  *Blackledge v. Allison*, 431 U.S. 63, 73 (1997).

Mitchell's claims fail to overcome those presumptions.

The record is clear in this case.  Mitchell freely and voluntarily waived his right to collaterally attack his sentence.  The Court provided a lengthy and detailed explanation of his rights.  Mitchell waived those rights, both in his plea agreement and in open court.  Therefore, Mitchell's plea agreement should be enforced and the motion should be dismissed.

### IV. Even if this Court considers Mitchell's claims, no basis exists to grant his § 2255 motion.

In the event the Court determines a review of Mitchell's allegations are warranted, the government will briefly address each of those contentions.  Mitchell alleges he received ineffective assistance of counsel because, according to Mitchell, his counsel:

11

A) Failed to negotiate a plea which would preclude a life sentence,

B) Failed to appeal his sentence or withdraw his plea, after being requested to do so,

C) Failed to object to the firearm-related enhancement,

D) Failed to object to prior convictions used as enhancements,

E) Failed to object to a sentence that violated *Blakely*, *Booker* & *Shepard*.

Ineffective assistance of counsel claims are reviewed under the two-prong test set forth in *Strickland v. Washington*, 466 U.S. 668 (1984). Under the test, Mitchell must first show that counsel made errors so serious that he was not functioning as the "counsel" guaranteed a defendant by the Sixth Amendment. *Id.* at 687. Judicial scrutiny of counsel's performance must be highly deferential; only those denied a fair trial by gross incompetence of their attorneys will be granted relief. *Rodriguez v. United States*, 286 F.3d 972, 983 (7th Cir. 2002) (*citing Strickland*, 466 U.S. at 689); *Kimmelman v. U.S.*, 477 U.S. 365, 382 (1986). Second, Mitchell must establish that he was so seriously prejudiced by those errors of counsel that the outcome was not fair or reliable. *Strickland*, 466 U.S. at 687. Failure to establish either one of the two components of *Strickland* is fatal to the claim. *United States v. Jackson*, 983 F.2d 757, 761 (7th Cir. 1993).

**A.  Counsel was not ineffective for failure to negotiate a plea
which would preclude a life sentence.**

Mitchell argues that counsel was ineffective for failing to negotiate a plea

agreement which would preclude a life sentence.  His allegation is baseless.  In

fact, counsel fully explained to Mitchell that he had attempted to do just that, but

the government would not agree to a plea of any kind that did not include a life

sentence, because the statute mandated a life sentence for the offense. (Aff.¶8)

Mitchell decided, after consultation with his counsel, that his best option was to

plead guilty, be sentenced as required by statute, and attempt to obtain a

reduction of that sentence through cooperation.  (Aff.¶6-8)

In his pending motion, Mitchell fails to point to any evidence that his

counsel could have obtained a plea agreement that established something

other than mandatory life as the sentence for his offense.  In short, the

government refused to agree to anything else based upon Mitchell's criminal

history and criminal conduct.  Clearly, the government had no obligation to enter

into any plea agreement with Mitchell.  *United States v. Hall,* 212 F.3d 1016, 1022

(7th Cir. 2000).  However, the government did agree to a plea agreement that

provided the opportunity for Mitchell's cooperation with the government. [2]

Thus, counsel was able to secure for Mitchell the possibility of relief from the statutorily-mandated life sentence. Mitchell can hardly complain that his counsel was ineffective for doing so.

In *Lawuary v. United States*, 199 F.Supp.2d 866, 877 (C.D.Ill. 2002), the court found that "counsel's failure to secure a better plea agreement does not rise to the level of ineffective assistance of counsel in violation of the Sixth Amendment." Furthermore, the failure of counsel to negotiate a different plea agreement than one reached is a matter of trial strategy and does not rise to the level of ineffective assistance of counsel. *Id.* Here, even if counsel could have somehow obtained a better or different plea agreement (which was not the case here - again, the government refused to enter into a plea agreement that precluded a life sentence), the failure to do so would not constitute ineffective assistance of counsel in violation of Mitchell's Sixth Amendment rights. Thus, Mitchell's ineffective assistance claim along these lines must fail.

---

[2]Upon resolution of Mitchell's petition, the government will evaluate whether Mitchell's cooperation under the plea agreement constituted substantial assistance in the investigation or prosecution of another person as contemplated by Rule 35(b) of the Federal Rules of Criminal Procedure.

14

**B. Counsel was not ineffective for failing to appeal sentence or withdraw plea after allegedly being requested to do so.**

Mitchell argues that counsel was ineffective for failing to appeal his sentence or withdraw his plea after being requested to do so. His claims are wholly without merit. Mitchell has offered no evidence to show that he timely requested counsel to withdraw his plea of guilty or to appeal his sentence. In fact, evidence to the contrary has been offered by the government. In open court Mitchell acknowledged he knew the process that had to be conducted to file an appeal.

| | |
|---|---|
| The Court: | At the time you entered your plea, you told me you were waiving any right you would otherwise have to file a notice of appeal. Nonetheless, I advise you that if you feel you have any appeal rights that survive that waiver, and it is your wish to appeal, any notice of appeal must be filed with the clerk of the court within ten days of today's date. As your attorney Mr. Appleton has an absolute responsibility to file that notice for you if it is your wish to appeal. Do you understand? |
| Mitchell: | Yes, sir, I do. |

(S.Tr.44)

According to counsel, Mitchell did not request his plea be withdrawn nor his sentence appealed, but continued to affirmatively assert that his wishes and intention was to cooperate with the government in hopes of receiving a reduction in his sentence. (Aff.¶10) On May 24, 2004, counsel mailed Mitchell a detailed

15

letter, re-explaining the process and options for appeal available to him, which letter is attached hereto to counsel's Affidavit. (Aff.¶10)  Counsel received a telephone message on January 20, 2005, from Connie Stroh, Mitchell's girlfriend and mother of his child, advising counsel to file an appeal.  However, the deadline for filing an appeal had long passed, as set out in counsel's May 24, 2004, letter to Mitchell. (Aff.¶10)

Mitchell and counsel met many times and discussed the charges against him, the evidence the government would present, and the potential consequences of going to trial or proceeding with a plea of guilty pursuant to the governments offered plea agreement. (Aff.¶5,6)  The plea agreement clearly contained a waiver of Mitchell's right to appeal and waiver of his right to file a motion under Section 2255, which waivers were disclosed to Mitchell and discussed with his counsel. (Aff.¶7)  Mitchell was fully aware of these waivers and understood them. (S.Tr.44, Aff.¶12)  At no time during the year that lapsed from the time of Mitchell's plea until the date of the sentencing hearing, did Mitchell ask counsel to withdraw his plea.  Mitchell waited until over six months after his sentencing to request, via his girlfriend, that his counsel file an appeal.

Since Mitchell never made a timely request of counsel to appeal the sentence or withdraw the plea, and since Mitchell had waived these rights in the

16

plea agreement, counsel did not act.  No basis exists to conclude that counsel's actions in this case constituted ineffective assistance of counsel.

### C. Counsel was not ineffective for failing to object to presence of a firearm used as a sentence enhancement.

Mitchell argues that counsel was ineffective for failing to object to the firearm-related enhancement.  Assuming, *arguendo*, that counsel did fail to object to the firearm enhancement, it would have had no impact upon Mitchell's sentence in this case.  Mitchell was facing a statutorily imposed, mandatory, life sentence for his offense, based on his two prior felony drug convictions.  Even if counsel had succeeded with his objection to the firearm enhancement, defendant would still have faced a life sentence for the offense.

Further, Mitchell's claims that counsel failed to object to the firearm related enhancement are refuted by direct evidence on the record.  In fact, Mitchell's counsel did object at sentencing to the enhancement being applied to him. (S.Tr.9-12)  After counsel spoke with Mitchell further, he withdrew the objection on the basis that Mitchell acknowledged the presence of a firearm for the imposition and purposes of enhancement. (S.Tr.10-11,18-19)

| Mr. Appleton: | Your honor, I've been advised by my client that he does acknowledge the presence of a weapon on one occasion...so, in light of that, he is prepared to withdraw his objection concerning paragraph 42. |
|---|---|
| The Court: | Is that correct, sir? |

17

| Mitchell: | Yes, sir. |
|---|---|
| The Court: | Have you discussed that with your attorney? |
| Mitchell: | Yes, sir. |
| The Court: | That's your decision? |
| Mitchell: | Yes. |

(S.Tr.18)

Again at sentencing, Mitchell acknowledged in open court the presence of

a firearm necessary for the imposition of the enhancement after being directly

questioned by the court.

| Mr. Lang: | When Mr. Mitchell was involved in making methamphetamine, particularly at the Dekezel farm, the evidence would establish that at different times the individuals participating, specifically Mr. Harvey, Mr. Bryner and perhaps even Mr. Mitchell, carried forearms. They were concerned about being caught, people seeing them or stealing the equipment and firearms were used and everybody knew it... |
|---|---|
| The Court: | Is that correct? |
| Mitchell: | I never carried a firearm, but the other two did at one time or another out there. |
| The Court: | Did you know they had firearms out there? |
| Mitchell: | Yes.  Mr. Harvey was known for carrying a firearm, sir. |

(P.Tr.27)

18

Mitchell had full opportunity to join his co-defendant in a hearing to debate the factual basis for the imposition of the enhancement, but chose not to do so after conferring with counsel. (S.Tr.12,18)  He voluntarily and freely waived his right to object to that matter and proceeded to plead guilty with the enhancement included in the charges. (S.Tr.18)  Since counsel did object and Mitchell openly acknowledged the withdrawal of the objection, counsel was not ineffective in this matter.

### D. Counsel was not ineffective for failing to object to prior convictions used as enhancements.

Mitchell argues that counsel was ineffective for failing to object to prior convictions used as sentence enhancements.  Mitchell's claims are baseless.  Moreover, Mitchell's counsel did object at sentencing to the enhancement being applied to him, but the court determined that the enhancements were properly applied pursuant to *United States v. Garcia*, 32 F.3d 1017 (7th Cir. 1994)( the purpose of the mandatory minimum enhancements is to target recidivism, . . . [focus should be put on] the degree of criminal activity that occurs after a defendant's conviction...rather than when the conspiracy began). (S.Tr.36,37;Aff.¶9)

On the record and in Mitchell's presence, counsel acknowledged to the Court that Mitchell recognized the statutory life sentence.

Mr. Appleton:                    Your Honor, my client recognizes that the statute requires that he be sentenced to life in prison. This is in light of the fact that one of th two felony drug convictions that were used to invoke the sentence of life imprisonment was the underlying activity that he participated in for the conspiracy, the offense that he's being sentenced on today, which seems, perhaps, from a perspective of a defense attorney, a bit harsh, but we recognize that Seventh Circuit in the United States versus Garcia 32 F 3rd 1017, has found that that's an appropriate factual situation to use as a predicate for invoking the statutory life in prison.

(S.Tr.36,37)

Here, the life sentence was inevitable, but counsel still appropriately raised the issue and discussed controlling precedent. His conduct in representing Mitchell can hardly be deemed ineffective.

### E. Counsel was not ineffective for failing to object to a sentence that violated *Blakely*, *Booker* & *Shepard*.

Mitchell argues that his sentence violated *Blakely*, *Booker* and *Shepard* and that counsel was ineffective for failing to object to that sentence. His argument is completely without merit. The standards set out in *Blakely* and *Booker* were decided *after* Mitchell was sentenced, therefore Mitchell's attempt to invoke the decisions are unavailing, as they have not been made retroactive for matters on collateral review. Counsel for Mitchell acknowledged that *Booker* was decided on June 24, 2005 and was therefore not considered by him at sentencing. (Aff.¶11)

20

The Seventh Circuit concluded in *Ashley v. United States*, 266 F.3d 671, 673 (7th Cir. 2001), that "[a] district judge may determine whether a novel decision of the Supreme Court applies retroactively, and thus whether a collateral attack is timely under § 2244(b)(2)(A) or § 2255" by applying the retroactivity criteria set forth in *Teague v. Lane*, 489 U.S. 288 (1989). This court has concluded that "*Blakely* does not apply retroactively on cases on collateral review…" *Pitts v. United States*, C.D.Ill. 04-4062 (December 29, 2004).

This court has also recognized that the holdings in *United States v. Booker*, 543 U.S.__, 125 S.Ct. 738, 754 (2005), are not applicable retroactively on collateral review. See also *McReynolds v. United States*, 397 F.3d 479, 481 (7th Cir. 2005); *Corcoran v. United States,* C.D.Ill. 05-4021 (March 17, 2005); *Bolton v. United States*, C.D.Ill. 04-4050 (November 18, 2004); *Cowan v. United States*, C.D.Ill. 95-40038 (February 4, 2005). Since *Blakely* and *Booker* do not apply to cases on collateral review, Mitchell's allegations seeking to benefit from those decisions must fail.

Mitchell cites *Shepard v. United States,* 125 S.Ct. 1254 (2005) in support of his position. However, the standard set out in *Shepard* is that "any fact ***other than a prior conviction*** sufficient to raise the limit of the possible federal sentence must be found by a jury, absent a waiver by the defendant." *Shepard,* 125 S.Ct. at 1256 (emphasis added). See also *Jones v. United States*, 526 U.S. 227, 243 (1999); *Apprendi*

21

*v. New Jersey*, 530 U.S. 466, 490 (2000).  Thus, *Shepard* is of little support to Mitchell's claim.

Furthermore, when a jury is not empaneled and the defendant pleads guilty a judge may look to the terms of the charging document, the terms of a plea agreement or court transcripts setting out the exchange between the judge and defendant confirming the factual basis for the plea by the defendant, or to some other judicial record.  *Shepard,* 125 S.Ct. at 1263.

Here, Mitchell admitted to the underlying factual basis for his plea in open court.  The standard for application of the sentencing in *Shepard* is exactly what the court followed here.  A jury trial was not required to determine Mitchell's sentence, which was mandated by statute.  Accordingly, no basis exists to disturb Mitchell's sentence.

### F. No prejudice was suffered by Mitchell as a result of counsel's performance.

To meet the prejudice prong of *Strickland,* Mitchell must show that but for counsel's unprofessional errors, there exists a reasonable probability that the result of the case would have been different.  Here, the evidence against Mitchell was overwhelming.  Mitchell provides no facts or evidence to show that he would have insisted on a trial, been acquitted, or his conviction would have been reversed, had his counsel performed differently.  "Self-serving speculation will

not sustain an ineffective assistance claim". *United States v. Anderson*, 61 F.3d 1290, 1298 (7th Cir. 1995) *quoting United States v. Ashimi*, 932 F.2d 643, 650 (7th Cir. 1991). Mitchell has failed to establish that the results would have been different and has therefore failed to prove prejudice.

**G. No need exists for an evidentiary hearing**.

Courts should dismiss motions to vacate without a hearing where it plainly appears from the motion, facts, and record that the movant is not entitled to relief. 28 U.S.C. § 2255; *Rules Governing § 2255 Cases, Rule 4(b)*, 28 U.S.C.A. foll. § 2255. Furthermore, no hearing is required if the allegations in the petition are 'mere conclusions or are inherently unreliable.' *United States v. Trussel*, 961 F. 2d 685, 689 (7th Cir. 1992) quoting *United States v. Fountain*, 777 F.2d 351, 358 (7th Cir. 1985); *Daniels v. United States,* 54 F.3d 290, 293 (7th Cir. 1995); *Aleman v. United States*, 878 F.2d. 1009, 1012 (7th Cir. 1989). Allowing indiscriminate hearings in such proceedings would eliminate the chief virtues of the justice system - "speed, economy and finality." *United States v. Delgado*, 936 F.2d 303, 309 (7th Cir. 1991) quoting *United States v. Politte*, 852 F.2d 924, 931 (7th Cir. 1988 )

The allegations raised by Mitchell are conclusory, unsupported, meritless and contradicted by the record in this matter. The record, transcripts, affidavit of counsel and pleadings provide this court with sufficient grounds upon which to

evaluate Mitchell's motion.

In order for a hearing to be granted , the motion must be supported by a detailed and specific affidavit, showing proof of allegations "going beyond mere unsupported assertions." *Prewitt v. United States*, 83 F3d 812, 819 (7th Cir. 1996). Here, Mitchell has submitted only bare, unsupported allegations that are contradicted in the record.  Mitchell's request for an extension for the completion of a prison library and access to law books will not change this situation.  The facts to support Mitchell's allegations cannot be found in books, but in his own memory and in the Court's records.  Therefore, he does not meet the threshold for obtaining an evidentiary hearing, nor should the court entertain his plea for an extension or an opportunity to refile.

### IV. Conclusion

For all the foregoing reasons, Mitchell's motion under § 2255 should be denied.

Respectfully Submitted,

JAN PAUL MILLER,
UNITED STATES ATTORNEY

BY:  ___/s/ Sara Darrow_____
        SARA DARROW
        ASSISTANT U.S. ATTORNEY
        1830 2nd Avenue, Suite 320
        Rock Island IL 61201
        Telephone: 309/793/5884

<u>CERTIFICATE OF SERVICE</u>

**I HEREBY CERTIFY** that on July 28, 2005, I electronically filed the foregoing with the Clerk of court using the CM/ECF system, which will send notification of such filing to the following: Mark R. Appleton; I hereby certify that I have mailed by United States Postal Service the document to the following non-CM/ECF participants:

Richard A. Mitchell
U.S.P. Terre Haute
PO Box 12015
Terre Haute, IN 47801


/s/ Sara Darrow
Sara Darrow
Assistant U.S. Attorney