## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF ILLINOIS

| | |
|---|---|
| RICHARD MITCHELL, | ) |
| Petitioner, | ) |
| v. | ) Case No. 05-4039 |
| UNITED STATES OF AMERICA, | ) |
| Respondent. | ) |

## O R D E R

This matter is now before the Court on Petitioner, Richard Mitchell's ("Mitchell"), Motion to Vacate, Set Aside, or Correct Sentence pursuant to 28 U.S.C. § 2255. For the reasons set forth below, the § 2255 Motion [#1] is DENIED.

### BACKGROUND

On April 25, 2003, Mitchell entered a guilty plea pursuant to a written plea agreement to charges of conspiracy to manufacture methamphetamine, in violation of 21 U.S.C. §§ 846, 841(a)(1) and 841(b)(1)(A) and attempted manufacture of methamphetamine, in violation of 21 U.S.C. §§ 841(a)(1) and 841(b)(1)(c) in the United States District Court for the Central District of Illinois. On May 14, 2004, Mitchell was sentenced to life imprisonment for conspiracy to manufacture methamphetamine and 360 months of imprisonment for attempted manufacture of methamphetamine to run concurrently.

Although he waived his right to appeal and pursue collateral relief pursuant to § 2255 in ¶¶ 10 and 11 of the written plea agreement, Mitchell has now filed the instant Motion to Vacate, Set Aside, or Correct Sentence pursuant to 28 U.S.C. § 2255. In his Motion, Mitchell attempts to collaterally attack his conviction based on allegations that he received ineffective assistance of counsel. This Order follows.

**Discussion**

A petitioner may avail himself of § 2255 relief only if he can show that there are "flaws in the conviction or sentence which are jurisdictional in nature, constitutional in magnitude or result in a complete miscarriage of justice." Boyer v. United States, 55 F.3d 296, 298 (7th Cir. 1995), *cert. denied*, 116 S.Ct. 268 (1995). Section 2255 is limited to correcting errors that "vitiate the sentencing court's jurisdiction or are otherwise of constitutional magnitude." Guinan v. United States, 6 F.3d 468, 470 (7th Cir. 1993), *citing* Scott v. United States, 997 F.2d 340 (7th Cir. 1993). A § 2255 motion is not, however, a substitute for a direct appeal. Doe v. United States, 51 F.3d 693, 698 (7th Cir.), *cert. denied*, 116 S. Ct. 205 (1995).

Mitchell's petition contains various claims including a claim of ineffective assistance of counsel during his plea agreement, ineffective assistance of counsel for not appealing his sentence or withdrawing the plea, and ineffective assistance of counsel for not objecting to the Court's consideration of certain evidence during his sentencing hearing. Here, Mitchell would appear to be barred from bringing this § 2255 motion by virtue of the fact that his plea agreement contains a waiver of his right to bring a collateral attack on his sentence. So long as the plea agreement stands, the waiver of the right to appeal or pursue collateral relief must generally be enforced. Id., *citing* United States v. Wagner, 103 F.3d 551 (7th Cir. 1996); Jones v. United States, 167 F.3d 1142, 1144 (7th Cir. 1999); United States v. Nelson, 124 F.3d 206, 1997 WL 374712, at *1 (7th Cir. July 1, 1997).

However, this circuit has recognized that the right to pursue a collateral attack pursuant to § 2255 survives "with respect to those discrete claims which relate directly to the negotiation of the waiver." Jones, 167 F.3d at 1144–45. Therefore, Mitchell's only

potential claim that could survive this waiver is his claim that his counsel was ineffective during the negotiations of the plea agreement.

The seminal case on ineffective assistance of counsel is <u>Strickland v. Washington</u>, 466 U.S. 668 (1984). In <u>Strickland</u>, the Court stated that in order for a prisoner to demonstrate that counsel's performance fell below the constitutional standard, the petitioner would have to show that "counsel's representation fell below an objective standard of reasonableness." <u>Strickland</u>, 466 U.S. at 687-88. A prisoner must also prove that he has been prejudiced by his counsel's representation by showing "a reasonable probability that but for counsel's unprofessional errors, the result of the proceeding would have been different." <u>Id.</u> at 694. The courts, however, must "indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." <u>Id.</u> at 690.

To satisfy <u>Strickland</u>'s prejudice prong in this case, Petitioner must demonstrate through objective evidence a reasonable probability that, but for counsel's purportedly erroneous advice, he would not have entered the guilty plea and would have insisted upon going to trial. <u>United States v. Woolley</u>, 123 F.3d 627, 635 (7th Cir. 1997). "It is far from obvious how a petitioner is expected to make such a showing, but it is clear that 'merely making such an allegation is insufficient.'" <u>United States v. Ryan</u>, 986 F. Supp. 509, 513 (N.D. Ill. 1997), *citing* <u>Key</u>, 806 F.2d at 139; *see also* <u>McCleese v. United States</u>, 75 F.3d 1174, 1179 (7th Cir. 1996) (requiring that the petitioner establish through objective evidence that he would not have accepted the plea).

Here, there are no specific factual assertions to the effect that Mitchell's attorney rendered ineffective assistance in negotiating any portion of his plea agreement or the waiver provisions. Mitchell claims that his counsel was ineffective during the plea

agreement and claims in his § 2255 petition that "Petitioner plea agreement was the result of bad legal advice and no sentencing strategies. Counsel never put any safe guards in place to stop a unwanted life sentence. Violating Rule 11, due process, and Sixth Amendment right to jury trial." (Petitioner's § 2255 Motion, May 1, 2005). To the extent that this can be deemed to be a claim that Petitioner's counsel was ineffective during the plea negotiation, the Court does not find that this meets the high standard required by Strickland. Specifically, Petitioner never claims that he would not have entered into the plea agreement if his counsel had provided him with effective assistance. Additionally, Mitchell's claim that his counsel was ineffective are negated by his own statements at the plea hearing and in the written plea agreement that Mitchell signed.

When the Court accepted Mitchell's guilty plea, it held a lengthy change of plea hearing pursuant to Rule 11 of the Federal Rules of Criminal Procedure. Rule 11 "provides protection for those who voluntarily choose to waive their constitutional right to a trial by pleading guilty while ensuring an adequate record to insulate the plea from appellate and collateral attacks." Key v. United States, 806 F.2d 133, 136 (7th Cir. 1986). Rule 11 also provides for a colloquy that "exposes the defendant's state of mind in the record through personal interrogation." Id., (*citing* United States v. Fountain, 777 F.2d 351, 356 (7th Cir. 1985)). This aspect of the Rule 11 hearing is especially important with respect to subsequent collateral proceedings, because the representations made by the defendant during a plea colloquy, as well as any findings made by the judge accepting the plea, constitute a formidable barrier in any subsequent collateral proceeding. Key, 806 F.2d at 136 (*citing* Thompson v. Wainwright, 787 F.2d 1447 (11th Cir. 1986)); Blackledge v. Allison, 431 U.S. 63, 97 S. Ct. 1621, 1629 (1977). Furthermore, "[s]olemn declarations in open court carry a strong presumption of verity." Blackledge, 97 S. Ct. at 1629.

After a careful review of the transcript of Petitioner's Rule 11 hearing, the Court finds that Petitioner has failed to demonstrate that his counsel was ineffective. Specifically, the Court asked whether he was satisfied with his counsel and Mitchell said that he was. Additionally, the Court reviewed the pertinent parts of Mitchell's plea agreement with him and allowed him the opportunity to ask questions regarding the agreement. As set forth below, this explanation was more than sufficient to remedy any misinformation (or lack of information) that may have been provided by his counsel with respect to the waiver provisions, and hence, he has failed to demonstrate actual prejudice under Strickland. This same dialogue also demonstrates the knowing and voluntary nature of Mitchell's waiver and guilty plea, as well as his competency. The pertinent portion of the record reveals the following colloquy between Mitchell and the Court after he was placed under oath:

> Q: Now that you have been sworn, you understand that your answers to my questions are subject to the penalties of perjury or giving a false statement if you don't answer truthfully?
>
> A: Yes, I do.
>
> * * *
>
> Q: Have you been treated recently for any mental illness or addiction to narcotic drugs of any kind?
>
> A: No, sir, I have not.
>
> Q: Are you currently under the influence of any drug, medication, or alcoholic beverage of any kind?
>
> A: No, sir, I'm not.
>
> Q: Have you received a copy of the indictment pending against you, that is the written charges made against you in this case?
>
> A: Yes, sir, I have.

Q: Have you fully discussed those charges and the case in general, including any possible defenses that you might have, with Mr. Appleton as your attorney?

A: Yes, sir, I have.

Q: And are you fully satisfied with the counsel, representation and advice given to you in this case by your attorney, Mr. Appleton?

A: Yes, sir, I am.

Q: Do I understand correctly that your willingness to plead guilty here today is due, at least in part, to the discussions that you and your attorney have had with the attorney for the United States leading up to the execution of this written plea agreement?

A: Yes, sir.

Q: Did you have a reasonable opportunity to read and discuss this plea agreement with your lawyer before you signed it?

A: Yes, sir.

Q: Does the plea agreement represent in its entirety every understanding that you have with the government?

A: Yes, sir.

\* \* \*

Q: On page 4 and about halfway through page 6 is a discussion of waiver of right to appeal and waiver of right to collaterally attack. What this means is that on the date that you're sentenced, when you walk out that door that's basically going to be the end of it, even if you're very unhappy with your sentence, even if you feel that the sentence was unlawful or unconstitutional, because in these paragraphs you're giving up the right to challenge either the process that was used in this proceeding or the sentence itself.

In fact, that would even include a claim, for example, that your own attorney had not effectively represented you in this case. The only exception to that as to the effectiveness of your attorney is that you're not giving up the right to claim that he was somehow ineffective concerning the plea agreement itself.

- 6 -

> You're also not giving up the right to file an appeal if the Court were to impose a sentence that it higher than the statutory maximum. I can tell you, in 20 years, I've never had that situation. And, of course, in your case as to Count 1, for example, the maximum is life, so it wouldn't be possible to go beyond that.
>
> A. Yes, sir, I know that.
>
> Q. And I'm saying this to you so that you understand really the almost total scope of your waiver here to file either a direct appeal to the Court of Appeals in Chicago or to file a post-conviction proceeding. Normally, that's done by way of a petition for writ of habeas corpus. That would be filed in this courtroom. You're giving up the right to do either one of those things. Do you understand that?
>
> A. Yes, sir.
>
> Q. Do you have any questions at all concerning the virtual total scope of this waiver?
>
> A. No, sir, I don't.
>
> \* \* \*
>
> Q: Are those the terms of your plea agreement with the Government as you understand them?
>
> A. Yes, sir, it is.
>
> Q. Has anyone made any other or different promise or assurance to you of any kind in an effort to induce you to plead guilty?
>
> A: No, sir, no one.
>
> Q: Has anyone attempted in any way to force you to plead guilty?
>
> A: No, sir.
>
> Q: Are you pleading guilty of your own free will because you are guilty?
>
> A: Yes, sir, I am.
>
> \* \* \*

>    Q:   Do you understand the Government may have the right to appeal any sentence that I impose, understanding that you're giving up virtually any opportunity that you have to challenge it?
>
>    A.   Yes, sir, I understand.
>
>    Q.   Do you understand that by entering into this plea agreement and entering a plea of guilty, you will have waived or given up your right to appeal virtually all or any part of this sentence?
>
>    A.   Yes, sir.

(Change of Plea Transcript at 3–16.)

The Court finds that nothing in the record even remotely suggests Mitchell did not knowingly and voluntarily enter the plea agreement, including the waiver provisions contained therein, or that Mitchell's counsel acted unreasonably when he negotiated a plea agreement that contained waiver provisions such as those in this case. To the contrary, the record clearly indicates that Mitchell expressly waived his rights to appeal and pursue collateral relief after extensive questioning and explanation by the Court. Additionally, the record also demonstrates that the Court provided him with a lengthy and detailed explanation of the waiver provisions that was more than adequate to supplement or correct any lack of information or misinformation that may have been provided by counsel. After receiving this explanation, Mitchell proceeded to state that he was acting of his own free will and understood everything as it had been explained to him by the Court.

Therefore, regardless of his current protestations that counsel was less than diligent in his representation and provided ineffective assistance in negotiating the plea agreement, the record before the Court unequivocally demonstrates that Mitchell was not prejudiced by his attorney's conduct in negotiating the plea agreement. Had Mitchell truly not wished

to plead guilty, been unhappy with this attorney, failed to understand the proceedings in which he participated, or been caught unaware by the waiver provisions, it would seem only reasonable that he would have made some attempt to correct the factual record or bring his plight to the attention of the Court. Mitchell did not do so. At no time did Mitchell express hesitation regarding the terms of the plea agreement, regarding his relationship with his attorney, or indicate that he did not fully understand the nature of his actions in entering into the plea agreement. Finally, although Mitchell's claim of ineffective assistance seems to center around his attorney's failure to ensure that proper safeguards were in place in the plea agreement to avoid a life sentence, Mitchell was fully aware of the mandatory nature of the life sentence. Specifically, during the plea colloquy, the Court discussed the fact that a conviction on the conspiracy charge would carry with it a mandatory life sentence no less than 5 times. (*See* Change of Plea Transcript at 6, 7, 12, 13, and 14.) Accordingly, Mitchell knew that he was facing life in prison as a result of his plea agreement and therefore cannot claim that his counsel was ineffective for not placing safeguards in place to avoid a life sentence.

Mitchell has failed to demonstrate that his counsel was ineffective or that he was actually prejudiced by his counsel's conduct in negotiating the plea agreement. Moreover, Mitchell has not alleged that but for his counsel's actions, he would not have entered into the plea agreement and would have insisted upon going to trial. Additionally, Mitchell never alleges that the improper advice of counsel negated the knowing or voluntary nature of his plea or the waiver itself, that the waiver was a product of coercion, or that the trial court relied on some constitutionally impermissible factor, such as race, in imposing sentence. Accordingly, the Court holds that Mitchell has failed to demonstrate that his attorney was ineffective during the negotiation of the plea agreement and therefore Mitchell's knowing

and voluntary waiver of his right to pursue collateral relief operates to bar him from pursuing relief under § 2255.

## CONCLUSION

For the reasons set forth herein, the Court cannot find that there has been any credible showing that but for the alleged unprofessional errors of counsel, there is any reasonable probability that the result of this proceeding would have been different, as the record clearly demonstrates that Mitchell knowingly, intelligently, and voluntarily waived his right to bring both an appeal and collateral attack on his conviction and sentence. Accordingly, Petitioner's Motion to Vacate, Set Aside, or Correct Sentence by a Person in Federal Custody pursuant to 28 U.S.C. § 2255 [#1] is DISMISSED.  This matter is now terminated.

ENTERED this 1st day of November, 2005.

s/ Michael M. Mihm
Michael M. Mihm
United States District Judge